Kathryn WEST, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–02–00651–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 6, 2003.

Rehearing Overruled Dec. 17, 2003.

---

George Allen Goodling, Cogdell & Goodling, Houston, TX, for Appellant.

Eric Kugler, Assistant District Attorney of Harris County, William J. Delmore, III, Chief Prosecutor, Appellate Division, Charles A. Rosenthal, Jr., District Attorney–Harris County, Houston, TX, for Appellant.

Panel consists of Justices HEDGES, NUCHIA, and HIGLEY.

## OPINION

LAURA CARTER HIGLEY, Justice.

A jury convicted appellant, Kathryn West, of aggregate theft, found the enhancement allegations in the indictment true, and assessed punishment at confinement for two years. The jury also im-

posed a $10,000 fine. On appeal, appellant contends that the trial court erred in admitting several of the State's exhibits because the exhibits were inadmissible hearsay.

We reverse and remand.

## BACKGROUND

Appellant was the business manager for the Moody Health Center Clinic (hereinafter the "Clinic") from December 1998 to August 29, 2001. Pursuant to her daily duties, appellant received from each of the Clinic's front-desk personnel all money received the day before, as well as a report of the prior day's transactions. Appellant entered the information obtained from the front-desk personnel into the computer system and generated a deposit report indicating the Clinic's total revenue from the day before. Appellant then prepared the daily deposit.

At trial, the State presented evidence supporting its theory that appellant stole a total of $8,019.24 from the Clinic between April 4, 2001 and August 29, 2001. Specifically, the State's theory asserted that, on numerous occasions, appellant kept cash she received from the front-desk personnel instead of including it with the daily deposit. To conceal her theft, appellant then erased from the computer system cash transactions equaling the amount she kept.

In presenting its theory to the jury, the State relied upon three bodies of evidence of which appellant complains on appeal. The complained-of evidence consists of (1) appellant's Gulf Coast Federal Credit Union account records (exhibit 28) (hereinafter "bank records") and summaries thereof (exhibits 29A, 29B, 35 and 36), (2) the Clinic's business records (exhibit 23) and summaries thereof (exhibits 3, 4, 5, 24–27 and 34), and (3) bank records of Margarita Rodriguez, another employee of the Clinic (exhibit 33).

## APPELLANT'S BANK RECORDS

In her third point of error, appellant asserts that the trial court erred in admitting her bank records because the State failed to establish the proper foundation for admittance of the records under the business records exception to the hearsay rule. Relatedly, in her fourth point of error, appellant asserts that the trial court erred in admitting the summaries of her bank records because the bank records, themselves, were not properly admitted.

### A. STANDARD OF REVIEW

■ Whether evidence is admissible is a question for the trial court to resolve. *Moyer v. State*, 948 S.W.2d 525, 528 (Tex. App.-Fort Worth 1997, pet. ref'd). We allow the trial court broad discretion concerning the admissibility of evidence and will only reverse upon a showing of a clear abuse of discretion. *Williams v. State*, 535 S.W.2d 637, 639–40 (Tex.Crim.App.1976); *Spradlin v. State*, 100 S.W.3d 372, 381 (Tex.App.-Houston [1st Dist.] 2002, no pet.). An abuse of discretion occurs when the trial court acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim. App.1990).

■ Error in the admission of evidence is non-constitutional error and is therefore subject to a harm analysis under Rule of Appellate Procedure 44.2(b). *Potier v. State*, 68 S.W.3d 657, 666 (Tex.Crim.App. 2002); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998). Therefore, to obtain a reversal of a conviction based on error in the admission of evidence, an appellant must show that the trial court's ruling was in error and that the error affected substantial rights of the defendant. TEX.R.APP. P. 44.2(b).

## B. BUSINESS RECORDS EXCEPTION

Hearsay is a statement, other than one made by the declarant while testifying at trial, that is offered to prove the truth of the matter asserted. *See* TEX.R. EVID. 801(d). Although hearsay statements are generally inadmissible, *see* TEX.R. EVID. 802, there are a number of exceptions to this general proscription. TEX.R. EVID. 803. One such exception to the hearsay rule, commonly referred to as the "business records exception," provides for the admission of records of regularly conducted business activities. TEX.R. EVID. 803(6). Rule of Evidence 803 provides as follows:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (6) **Records of Regularly Conducted Activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. "Business" as used in this paragraph includes any and every kind of regular organized activity whether conducted for profit or not.

*Id.*

Therefore, records that would otherwise be hearsay are admissible under Rule 803(6), if the following foundational requirements are shown: (1) the records were made and kept in the course of a regularly conducted business activity; (2) it was the regular practice of that business activity to make the records; (3) the records were made at or near the time of the event being recorded; and (4) the person making the records or submitting the information had personal knowledge of the events being recorded. *Id; Philpot v. State,* 897 S.W.2d 848, 851–52 (Tex.App.-Dallas 1995, pet. ref'd).

## C. APPELLANT'S BANK RECORDS

At trial, Terri Wollard, the custodian of records for Gulf Coast Federal Credit Union, provided the foundation testimony regarding appellant's bank records. Ms. Wollard testified as follows:

Q: Let me show you what I have previously marked as State's Exhibit No. 28 [Gulf Coast account records]. Do you recognize State's Exhibit No. 28?

A: Yes. This is what we pulled per the subpoena.

Q: Okay. And are those records that are maintained by the credit union as part of its business?

A: Yes.

Q: Are those records made at or near the time of the events that they record?

A: Yes.

Q: Are they made by persons with personal knowledge of the events that were contained therein?

A: Yes.

When the State attempted to introduce the records into evidence, trial counsel made the following objection to which the State did not respond:

[Trial counsel]: Got three objections. First of all, she hasn't stated that they're regularly kept in the business. She just said that

they're kept. She also has not stated that she personally knows the manner in which they're kept, and thirdly, we're objecting, reasserting our objection. We have not had 14 days notice.

Appellant now contends that the trial court erred in admitting the bank records because the State failed to establish a proper foundation for admittance of the records under Rule 803(6). Specifically, appellant argues that the State failed to elicit testimony from Ms. Wollard showing that (1) the records were made in the course of a regularly conducted business activity and (2) it was the regular practice of that business activity to make the records. The State counters that the term "business," as defined by Rule 803(6), connotes both regularity in the activity recorded, as well as regularity in keeping the records. The State concludes that Ms. Wollard's testimony that the bank records were "maintained by the credit union as part of its business," satisfied these foundational requirements.

The definition of "business" found in Rule 803(6) must be considered within the context of the rule itself. *See* TEX.R. EVID. 803(6). Within the context of Rule 803(6), the term acts as one of two restrictive modifiers, limiting the records to which the exception applies to those of "regularly conducted business activities." Because Rule 803(6) expressly provides that an activity to which records pertain must not only be a business activity but also a "regularly conducted" activity, "business" cannot connote a regularity in the activity recorded. Otherwise, the phrase "regularly conducted" would become superfluous. Such superfluity is contrary to established rules of construction. *Dowthitt v. State,* 931 S.W.2d 244, 258 (Tex.Crim.App.1996). For the same reason, it would be improper to conclude that the term "business" con-

notes a regularity in keeping the records, as such a connotation would render unnecessary the rule's language requiring that the regular practice of a business activity be to keep the records at issue.

■ We conclude testimony reflecting that records are maintained as part of a business does not relieve a party from otherwise showing that the records were kept in the course of a regularly conducted business activity and that it was the regular practice of that business activity to make the records.

■ The State also asserts that the trial court was entitled to look to the bank records themselves to determine if they were admissible under Rule 803(6). However, an examination of the bank records does not establish that the records were of a regular conducted activity or that it was the regular practice of the bank to make such records. There is no presumption that bank records have any more reliability than other business records, such that bank records are immune from Rule 803(6) foundational requirements.

■ Other than Ms. Wollard's testimony, there was no testimony establishing the foundation required by Rule 803(6). Consequently, the admissibility of appellant's bank records depended on whether Ms. Wollard's testimony satisfied the rule's foundational requirements. We conclude that Ms. Wollard's testimony did not establish that appellant's bank records were made in the course of a regularly organized activity or that it was the regular practice of that business activity to make such records.

We hold that the trial court erred in admitting appellant's bank records, because the State failed to establish a proper foundation for their admittance. Because the summaries of appellant's bank records were predicated on the improperly admit-

ted bank records, we further hold that the trial court erred in admitting the summaries of appellant's bank records as well.

## D. Harm Analysis

Having determined that the trial court erred in admitting the bank records into evidence, we must now determine whether that error affected the substantial rights of appellant.

 A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *Morales v. State,* 32 S.W.3d 862, 867 (Tex.Crim.App.2000). A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury or had but a slight effect. *Id.* In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including (1) the State's theory and any defensive theories, (2) the nature of the evidence supporting the verdict, (3) any testimony or physical evidence admitted for the jury's consideration, and (4) the State's closing arguments. *Id.*

 Appellant's trial theory alleged that, although money was stolen from the clinic, appellant was not responsible. Appellant tried to show that the missing money was the result of the Clinic's poor organization or another employee's theft. The State, however, used appellant's bank records to tie the missing money to appellant.

Appellant's bank records showed every transaction appellant made between April 1, 2001 and October 31, 2001. The summaries of the account activity condensed and arranged the information into a spreadsheet format in which patterns of activity could be identified. The State relied heavily on this evidence.

The State presented Judith Golike, a fraud examiner for the Harris County District Attorney's office, to testify as an expert witness as to what appellant's account activity indicated. Ms. Golike testified that the frequency and number of cash deposits made to the account were suspicious. Further, Ms. Golike testified that the amount of cash deposited was suspicious as well. Ms. Golike also pointed out that the cash deposits almost completely stopped at around the time that appellant was fired from the Clinic. Finally, Ms. Golike pointed out that appellant's account would have been overdrawn during the period of the theft without the cash deposits. Ms. Golike concluded that a conservative estimate of appellant's theft was $8,019.24.

The State also relied on the bank records and the summaries thereof during closing arguments. During closing arguments, the prosecutor argued as follows:

And don't forget about [appellant's] bank account. The amount of money that went into her bank account. The most critical issue regarding the bank account is that there were only two cash deposits after September 6th. Go back there and look through her records. Look at the spread sheet; and you will see that once she was confronted by Sandy Mooney, once her theft scheme was over, there were no more cash deposits of any significance into her bank account. What does that tell you?

Four thousand five hundred dollars between April and August; and then, absolutely nothing after September 6th when her scheme was discovered.

During deliberations, the jury took the prosecutor's advice and considered the bank records. Indeed, the jury specifical-

ly requested appellant's bank records as well as the summaries of the bank records.

We conclude the trial court's admittance of appellant's bank records and the summaries of appellant's bank records could have influenced the jury and had more than a slight effect on the verdict. We hold that the admittance of this evidence affected appellant's substantial rights. We, therefore, sustain appellant's third and fourth points of error on appeal.

Because our ruling on appellant's third and fourth points of error is dispositive of this appeal, we do not address appellant's other points of error.

## CONCLUSION

Having sustained appellant's third and fourth points of error, we reverse the trial court's judgment and remand the case to the trial court for further proceedings consistent with this opinion.