Opinion issued April 17, 2008 



 


    



In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-06-01116-CR
____________

RICKY PITTS JR., Appellant,

V.

THE STATE OF TEXAS, Appellees




On Appeal from the 338th District Court
Harris County, Texas
Trial Court Cause No. 1031447



 
MEMORANDUM OPINION

          A jury found appellant, Ricky Pitts Jr., guilty of capital murder. See Tex. Pen.
Code Ann. § 19.03 (Vernon 2003 & Supp. 2007). The trial court assessed
punishment at life in prison, the State’s not having sought the death penalty.


 We
determine (1) whether the evidence is legally and factually sufficient to prove that
appellant intentionally caused the death of the complainant and that appellant was the
one who shot the complainant; (2) whether the trial court erred in refusing appellant’s
request for a jury instruction on the lesser-included offense of aggravated robbery;
and (3) whether the trial court erred in admitting hearsay statements made by the
complainant to a witness during the commission of the offense. We affirm.
Facts
          On June 12, 2005, Antonio Morales was a passenger in the car of his cousin,
the complainant, when they stopped at a red light at the intersection of Airline and
Little York. Lakeisha Ball, appellant’s former girlfriend, approached the passenger
side of the car and spoke to the complainant, who turned off the ignition and told
Morales that they would leave in a minute. Appellant suddenly appeared, placed a
gun to Morales’s head, and demanded the complainant’s keys. Ball and appellant
then entered the back seat of the car, and appellant gave the keys back to the
complainant and told him to drive. As they were driving, the complainant told
Morales, who spoke no English, that appellant said for Morales to give appellant his
money. Morales did so. Then Morales gave appellant his wallet when the
complainant told Morales that appellant was demanding it, too. When they stopped
at a light with a truck in front of them, the complainant told Morales that appellant
said to put their hands down because of the people in front of them. When they
stopped in a vacant lot, the complainant told Morales that appellant said for Morales
to get out of the car and to kneel down. Morales did so, thinking that appellant was
going to shoot him. However, when he heard the gun discharge, it was the
complainant who had been shot. Morales lifted the complainant out of the car and
sought help. The complainant died from a single gunshot to the back of the chest. 
          Shortly thereafter, Ball and appellant showed up at the apartment of an
acquaintance of appellant’s, Constance Young. Young’s apartment was near the
vacant lot where the complainant was shot.
          Houston Police Officer William Booth conducted the follow-up investigation.
He spoke with Morales, who provided valuable information, and then Booth received
a tip that resulted in the development of a suspect in the case. Booth proceeded to the
Baron Motel, in the same vicinity as the vacant lot where the crime occurred, with a
photograph of appellant. Booth also showed a photographic spread to Morales, from
which Morales picked appellant as the one with the gun who had robbed him and shot
the complainant. Morales also identified a photograph of Ball as the female involved.


 

Sufficiency of the Evidence
          In his first two points of error, appellant challenges the legal and factual
sufficiency of the evidence to prove that it was appellant who fired the shot that killed
the complainant and that appellant fired the shot intentionally. Appellant argues that
because Morales had his head down, he did not see the shot fired, he did not see who
fired the shot, and he could not rule out the possibility that the gun had accidentally
discharged or malfunctioned.
A.      Standards of Review
          We apply the usual standards of review for legal-sufficiency and factual-sufficiency challenges. See Jackson v. Virginia, 443 U.S. 307, 318–19, 99 S. Ct.
2781, 2788–89 (1979) (legal sufficiency); Drichas v. State, 175 S.W.3d 795, 798–800
(Tex. Crim. App. 2005) (legal and factual sufficiency); Watson v. State, 204 S.W.3d
404, 414–15 (Tex. Crim. App. 2006) (factual sufficiency).
B.      Legal Sufficiency
          Although appellant raises other hypotheses as to how the complainant was
shot,


 we conclude that a rational jury could have found beyond a reasonable doubt
from the evidence that appellant intentionally shot the complainant during the course
of a robbery. 
          Viewed in the light most favorable to the jury’s verdict, the evidence shows
that appellant directed the entire offense and was the only person armed with a
firearm throughout the incident. Morales testified that appellant “got mad at” the
complainant during the ride, which he could tell because appellant “talked to [the
complainant] loud.” In fact, Morales testified that the tone of appellant’s voice as the
complainant drove into the vacant lot was “a little more, like more angry” and that
appellant was addressing the complainant “strongly,” as he had been doing “during
the whole time.” However, just before the single shot was fired, Morales thought that
appellant was going to shoot Morales because appellant had the gun pointed at
Morales. 
          Additional evidence demonstrated that the complainant was not shot by Ball,
who was sitting directly behind him. The crime scene investigation showed that there
were no bullet holes inside the car, including through the back seat, and the bullet
recovered from the complainant’s body showed no signs that it had traveled through
anything solid, like a car seat, or that it had ricocheted off anything. The bullet
entered the right side of the complainant’s back, pierced both lobes of his right lung,
and passed through the right atrium of his heart, lodging in his chest. The absence of
gunshot residue and “stippling” (particles of unburned gunpowder), which normally
appear when a gun is fired at close range, caused the assistant medical examiner to
conclude that the complainant was shot from a distance of more than two feet. The
assistant medical examiner also opined that the complainant could not have been
sitting straight forward in his seat because “the back of the seat would be in the way. 
He would have to be turned somewhat, one direction or the other.” Additionally, the
medical examiner opined that had the gun been placed directly between the driver’s
seat and the complainant’s back, there would have been residue, which there was not. 
The evidence showed that appellant was standing half in and half out of the back
passenger door, which would have placed him behind and to the right of the
complainant. 
           Given this evidence, we hold that a rational jury could have concluded beyond
a reasonable doubt that it was appellant who shot the complainant from the passenger
side of the car and that appellant did so intentionally. Therefore, the evidence is
legally sufficient. 
          We overrule appellant’s first point of error.
C.      Factual Sufficiency
          Appellant rested after the State and, thus, presented no alternative version of
how the events transpired. Appellant argues on appeal that the complainant could not
have been shot by appellant if the complainant had been in the position that Morales
said that he was in just prior to the gunshot. This is a challenge that the evidence
supporting the jury’s verdict is so weak as to render the verdict clearly wrong and
manifestly unjust. See Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).
          Morales testified that appellant’s former girlfriend was seated behind the
complainant and that appellant was seated behind Morales. Appellant held the gun
to the back of Morales’s head throughout the offense, at least until Morales was
ordered to get out and to kneel down on the passenger side. Even up to just before
the shot was fired, appellant had continued to point the gun at Morales. The last
position in which Morales saw the complainant was sitting in the driver’s seat, facing
forward.
          Given the positions of the parties, and because the bullet entered the back of
the complainant’s chest, appellant argues that it was more likely that the complainant
was shot from behind, where appellant’s girlfriend was sitting. In response, the State
argues that the jury could have implicitly found that the complainant had turned to get
out of the car just before appellant shot him, thereby reconciling the medical
examiner’s testimony of the location of the entrance wound with the complainant’s
and appellant’s respective positions. 
          Viewing all of the evidence in a neutral light,


 we hold that the evidence
showing that appellant intentionally shot the complainant is not so weak as to render
the verdict clearly wrong and manifestly unjust. See id.
          We overrule appellant’s second point of error.
Lesser-Included-Offense Instruction
          In his third point of error, appellant contends that the trial court erred when it
refused appellant’s request for a jury charge on the lesser-included offense of
aggravated robbery. Appellant argues that, because the evidence did not
unequivocally establish that appellant intentionally caused the death of the
complainant, the trial court should have submitted a jury instruction on the lesser-included offense of aggravated robbery.
A.      Standard of Review
          To determine whether a defendant was entitled to an instruction on a lesser-included offense, we employ a two-prong analysis, examining (1) whether the
requested lesser offense is, in fact, a lesser-included offense and (2) whether there is
some evidence that would permit a jury rationally to find that if the defendant was
guilty, he was guilty only of the lesser offense. Rousseau v. State, 855 S.W.2d 666,
672–73 (Tex. Crim. App. 1993).
 
B.      Application
          The parties agree that aggravated robbery meets the first prong of the Rousseau
analysis; accordingly, we direct our analysis to whether there is some evidence that
appellant was guilty only of aggravated robbery. In other words, is there any
evidence that the complainant was not murdered by appellant during the robbery? 
Appellant relies upon the same alternative hypotheses as in his first two points of
error as evidence that it was not appellant who shot the complainant and that
appellant did not intentionally shoot the complainant.
          At trial, appellant stated that his request for a lesser-included offense of
aggravated robbery was based on the testimony of Morales and Dr. Wolfe, the
assistant medical examiner, without specifying upon what testimony he relied. 
Nothing in Morales’ testimony established that it was not appellant who shot the
complainant or that, if it was appellant, he shot the complainant recklessly or
negligently. Indeed, as in his sufficiency arguments, appellant relies on the fact that
Morales did not see the shooting to postulate that it might not have been appellant
who shot the complainant or that appellant might not have shot intentionally. As for
the assistant medical examiner, his testimony provided the evidence that ruled out
appellant’s hypothesis that it was Ball who shot the complainant. Moreover, nothing
in the doctor’s testimony showed that appellant fired the handgun recklessly or
negligently. Again, these are mere theories of appellant, unsupported by any
evidence. See In re M.R.R., 2 S.W.3d 319, 326 (Tex. App.—San Antonio 1999, no
pet.) (upholding denial of instruction on lesser-included offense for lack of evidence
supporting that appellant’s theory that unidentified third-party shooter fired fatal
gunshots). We hold that the trial court did not err in denying appellant’s request for
an instruction on the lesser-included offense of aggravated robbery.
          Accordingly, we overrule appellant’s third point of error.
Admission of Hearsay
          In his fourth point of error, appellant contends that the trial court erred by
permitting Morales to testify about hearsay statements made by the complainant. The
specific statements of which appellant complains were made immediately before and
during the course of the offense: (1) “hold on a minute, we’ll leave in a moment”; (2)
“The complainant told Morales to give appellant his money”; (3) “The complainant
told Morales to put his hands down because there were people in front of them”; (4)
“he’s telling you to get out of the car”; and (5) “My cousin told me to get out of the
car and kneel down.” Although there was no objection to any of these statements
before the jury, appellant had previously objected to Morales’s testifying to
statements made to him by the complainant as being hearsay. The trial court had
overruled the objection. 
          Appellant argues that the prosecutor’s stated bases offered at trial for
admissibility—i.e., that these statements were not offered for their truth, were present
sense impressions, showed the complainant’s existing mental condition, and were
interpretations given to Morales, a Spanish speaker—are unavailing. On appeal, the
State argues that the statements were not hearsay because they were statements of
appellant that the complainant interpreted for Morales and, thus, were admissions of
a party-opponent. See Tex. R. Evid. 801(e)(2)(C),(D) (providing that admission by
party opponent is non-hearsay if it is “a statement by a person authorized by the party
to make a statement concerning the subject” or “a statement by the party’s agent or
servant concerning a matter within the scope of the agency or employment, made
during the existence of the relationship”).
           This Court has previously adopted the “language conduit” rule, whereby a
translated statement of a defendant is admissible on the theory that the interpreter
serves as an agent of, or a language conduit for, the declarant-defendant, thus
rendering the statement the defendant’s own admission under Texas Rule of Evidence
802(e)(2)(D). See Gomez v. State, 49 S.W.3d 456, 459–61 (Tex. App.—Houston [1st
Dist.] 2001, pet. ref’d); see also Cassidy v. State, 149 S.W.3d 712, 715–16 (Tex.
App.—Austin 2004, pet. ref’d). The language conduit rule examines four factors to
determine admissibility: (1) which party supplied the interpreter; (2) whether the
interpreter had any motive to mislead or to distort; (3) the interpreter’s qualifications
and language skill; and (4) whether actions taken subsequent to the conversation were
consistent with the statements as translated. Gomez, 49 S.W.3d at 459. 
          Here, it appears that the complainant volunteered to interpret as appellant was
holding a gun to Morales’s head and demanding Morales’s money and wallet,
instructing Morales to put his hands down, and ordering Morales to get out of the car. 
However, nothing shows that appellant objected to the complainant’s voluntary
interpretation for Morales, thereby implicitly indicating appellant’s acquiescence in
the arrangement. See Gomez, 49 S.W.3d at 460 (“In this case, neither party ‘supplied’
Andrade as an interpreter; rather, he was a bystander who took on that role. However,
from the record it can be inferred that both [defendant] Andrade and Officer Peters
acquiesced to Andrade acting as interpreter.”). The complainant was Morales’s
cousin; it is thus a fair inference that he knew that Morales spoke no English and that
he volunteered to translate in order to keep appellant from shooting Morales for not
following appellant’s orders. The interpreter-complainant certainly had no motive
to mislead or to distort because his cousin’s life appeared to depend on whether
Morales followed appellant’s orders. The interpreter-complainant’s qualifications
and language skill are unknown, but he was apparently able to translate accurately
because Morales sufficiently satisfied appellant’s demands to avoid being shot. 
Indeed, the fact that Morales complied with demands for his money, his wallet,
putting his hands down, and getting out of the car demonstrates the reliability of the
complainant as a language conduit for appellant. Applying the Gomez factors, we
conclude that the trial court did not err in overruling appellant’s hearsay objections
to the four statements addressed above.
          We note that one of the statements of which appellant complains was made
before appellant entered the car and began giving demands. That statement—the
complainant’s explaining to Morales that they were not going to proceed right
away—contains absolutely nothing inculpatory or harmful to appellant. If there was
any error in admitting it, we hold that it was harmless for not affecting appellant’s
substantial rights (indeed, any error is harmless beyond any doubt). See Tex. R. App.
P. 44.2(b) (“Any other error, defect, irregularity, or variance that does not affect
substantial rights must be disregarded.”); West v. State, 124 S.W.3d 732, 734, 737
(Tex. App.—Houston [1st Dist.] 2003, pet. ref’d) (holding that Texas Rule of
Appellate Procedure 44.2(b) applies to error in admitting hearsay testimony because
that error is non-constitutional). We hold that the remaining four statements were not
hearsay under the language conduit rule. A trial court does not abuse its discretion
in overruling a hearsay objection to evidence that is not hearsay.
          Accordingly, we overrule appellant’s fourth point of error.
          

Conclusion
          We affirm the judgment of the trial court.
                                                                        

 
Tim Taft
Justice

Panel consists of Justices Taft, Keyes, and Alcala.

Do not publish. Tex. R. App. P. 47.2(b)