ACCEPTED
01-14-00294-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
7/1/2015 2:44:42 PM
CHRISTOPHER PRINE
CLERK

**No. 01-14-00294-CR**

**IN THE**

**FIRST COURT OF APPEALS**

**STATE OF TEXAS**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

7/1/2015 2:44:42 PM

CHRISTOPHER A. PRINE
Clerk

_____

**ALBERT NIEVES,** *Appellant*

**v.**

**THE STATE OF TEXAS,** *Appellee*

_____

On Appeal from the 179th District Court

Harris County, Texas

Trial Court Cause Number 1392793

_____

**APPELLATE BRIEF**

_____

Joe David Wells
State Bar No. 90001904
PO Box 2064
Houston, Texas 77252
Tel (281) 410-8778
Fax (832) 201-0467

ATTORNEY FOR APPELLANT

ORAL ARGUMENT REQUESTED

## NOTICE OF ALL INTERESETED PARTIES

Pursuant to TEX. R. APP. P. 38.1(a), the following persons are interested parties:

Appellant
Albert Nieves

Attorneys for Appellant
Mr. Joe David Wells (on appeal)
P.O. Box 2064
Houston, Texas 77252
(281) 410-8778

Mr. Patrick Ruzzo (at trial court)
4500 Montrose Blvd.
Second Floor, Suite A
Houston, Texas 77006
(281) 497-0778

Trial Judge
The Honorable Kristin Guiney
179th District Court
1201 Franklin
Houston, Texas 77002

Attorneys for State
Ms. Angela Smith (at trial court)
Mr. Gregory James Houlton (at trial court)
Mr. Alan Curry (on appeal)
Harris County District Attorney's Office
1201 Franklin, Suite 600
Houston, Texas 77002
(713) 755-5800

## **TABLE OF CONTENTS**

*Page*

Notice of All Interested Parties . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Points of Error Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

 Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

TRAP 9.4(i)(3) Certificate of Compliance . . . . . . . . . . . . . . . . . 23

## TABLE OF AUTHORITES

*page*

**Cases**

*Brooks v. State*, 323 S.W.3d 893 (Tex.Crim.App. 2010)      21

*Burden v. State,* 55 S.W.3d 608 (Tex. Crim. App. 2001)      19

*Cavender v. State*, 547 S.W.2d 601 (Tex. Crim. App. 1977)      13

*Ex Parte Briggs*, 187 S.W.3d 458 (Tex. Crim. App. 2005)      16

*Ex parte Bums*, 601 S.W.2d 370 (Tex. Crim. App. 1980)      12

*Ex Parte Lahood*, 401 S.W.3d 45 (Tex.Crim.App. 2013)      12

*Ex parte Moore*, 395 S.W.3d 152 (Tex.Crim.App.2013)      12

*Ex parte Welborn*, 785 S.W.2d 391, 396 (Tex. Crim. App. 1990)      17

*Fuller v. State*, 224 S.W.3d 823 (Tex. App. – Texarkana 2007)      13

*Huffman v. State*, 746 S.W.2d 212 (Tex.Crim.App. 1988)      13

*Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979)      21

*Johnson v. State,* 967 S.W.2d 410 (Tex. Crim. App. 1998)      19

*Motilla v. State,* 78 S.W.3d 352 (Tex. Crim. App. 2002)      19

*Oprean v. State,* 201 S.W.3d 724 (Tex. Crim. App. 2006)      19

*Potier v. State,* 68 S.W.3d 657 (Tex. Crim. App. 2002)      19

*Robertson v. State*, 187 S.W.3d 475 (Tex. Crim. App. 2006)      15

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984)      12

*Thompson v. State*, 9 S.W.3d 808 (Tex.Crim.App.1999)                    12

*West v. State,* 124 S.W.3d 732 (Tex. App.-Houston [1st Dist.] 2003)      19

*Wright v. State*, 223 S.W.3d 36 (Tex. App. – Houston[1st Dist.] 2006)    16

*Zuliani v. State,* 97 S.W.3d 589 (Tex. Crim. App. 2003)                  19

**<u>Statutes</u>**

TEX. CODE CRIM. PROC. Art. 38.072                                        20

TEX. CODE CRIM. PROC. Art. 44.25                                         20

TEX. R. APP. P. 44.2(b)                                                  19

TEX. R. EVID. 801                                                        20

U.S. CONST. amend. VI                                                    12

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

## STATEMENT OF THE CASE

Appellant Albert Nieves was charged by indictment with the felony offense of Aggravated Sexual Assault of a Child Under 14 Years of Age in the 179th District Court of Harris County, Texas, the Honorable Kristin Guiney presiding. (CR p.9). This case is a re-indictment of a previous charge of super aggravated sexual assault of a child under six years of age, Cause No. 1312155. (CR p. 17). On March 31, 2014, appellant was found guilty following a jury trial. (CR p.286). Appellant was sentenced to 10 years in the institutional division of the Texas Department of Criminal Justice. (*Id*). Appellant timely filed a notice of appeal on March 31, 2014. (CR p.290). This Court has jurisdiction pursuant to Tex. R. App. P. 26.2.

# **POINTS OF ERROR PRESENTED**

I:    Appellant was denied due process by trial counsel's failure to raise appellant's ethnicity in relation to the DNA evidence.

II:    Appellant was denied due process by trial counsel's failure to object to the prosecution's statement that appellant's DNA was present in the complaining witness' panties.

III:    Appellant was denied due process by his own trial counsel's statement to the jury that appellant's DNA was present in the complaining witness' panties.

IV:    Appellant was denied due process by trial counsel's failure to retain a DNA expert.

V:    The cumulative effect of trial counsel's errors regarding DNA evidence denied appellant of due process.

VI:    The trial court erred by admitting a second outcry statement from the complaining witness.

VII:    The evidence was insufficient to support a conviction for aggravated sexual assault of a child under 14 years of age.

## STATEMENT OF FACTS

The complaining witness ("CW" herein) is the niece of appellant. (RR VI p.8). At the time of her testimony at trial, CW was seven years old. (RR VI p.4). In June 2011, when CW was four years old, she made an outcry to her mother that appellant sexually assaulted her while spending the night at his apartment. (RR IV p.65).

According to CW's mother, her daughter told her that appellant pulled her pants down and licked her privates. (RR IV p.65-66). CW's mother was alone with CW when this outcry was made. (RR IV p.67). CW's father was in another room reading when the outcry occurred. (*Id*). CW's mother had her daughter repeat the outcry to her father. (*Id*). CW's mother saved the panties her daughter wore home from appellant's apartment in a Ziplock bag. (RR IV p.83). These panties were later tested by the Harris County Institute for Forensic Sciences for DNA. (RR IV p.90).

CW's mother relayed her daughter's outcry to her pediatrician, Dr. Patricia Stevens. (RR IV p.92). Dr. Stevens referred CW to Texas Children's Hospital. (RR IV p.92-93). A sexual assault examination was performed at Texas Children's Hospital. (RR V p.169). This examination was conducted within 96 hours of the alleged assault. (RR V p.173). No physical injuries or trauma consistent with sexual assault were found. (RR V p.173, 179). Swabs were taken during the

examination from the complainant's genital area for DNA testing. (RR V p.173-174). CW's panties were also turned over to the police for testing. (RR V p. 18).

Serology screening for bodily fluids, including blood and semen, were conducted on the panties prior to DNA analysis. (RR VI p.82). No semen or blood was detected on the panties or on the swabs from the complainant's genitals. (*Id*). CW's panties were not tested for saliva. (RR VI p.94).

During the DNA analysis, DNA from CW and two males were detected on the panties. (RR VI p.89). Appellant could not be excluded from one of the male DNA profiles. (RR VI p.97). The State's DNA expert, Michal Pierce, provided the following statistics for the DNA profile that appellant could not be excluded from:

Q. What is the probability -- because you previously testified that Mr. Nieves could not be excluded as a contributor to the DNA that was found on the inside crotch of those panties. What was the probability that he could not be excluded?

A. So, for the Y-STR profile where I said he could not be excluded, the statistic I generated was 1 in 1,685 for Caucasians; 1 in 1,601 for African-Americans; 1 in 285 for Hispanics.

Q. So, does that mean that if you selected a random person -- can you kind of explain that statistic to us and how it compares?

A. Yes. It means that if I had -- what this stat is meaning literally, if you took it in the literal context, if I had 1,685 Caucasian males, by

the statistic I would expect only one of those males to have the profile that Mr. -- that the -- that Mr. Nieves, where he was consistent in the panties, that profile, that's how common or rare that profile is in terms of Y-STRs. It's an approximate statistic. It doesn't mean that if there was 1,684 I wouldn't find someone.

(RR VI p.97)

Appellant is hispanic, born and raised in Puerto Rico. (RR VII p.7). During the cross examination of the State's DNA expert, appellant's trial counsel did not raise appellant's Hispanic heritage. Appellant's trial counsel also did not call a DNA expert of his own to explain the DNA results to the jury.

# SUMMARY OF ARGUMENT

Appellant was denied due process by errors made by his trial counsel. These errors include: (1) failing to raise appellant's ethnicity in relation to more favorable statistics regarding the DNA evidence; (2) failing to object to the erroneous statement by the prosecution that appellant's DNA matched the profile in the complaining witness' panties when the evidence was that appellant's profile could simply not be excluded; (3) telling the jury during closing argument that appellant was the primary contributory of DNA to complainant's panties contrary to the testimony of the State's DNA expert; (4) failing to retain a defense DNA expert to explain the evidence to him and the jury. The cumulative effect of these errors also denied appellant of due process.

Aside from the errors of his trial counsel, appellant was also harmed by the erroneous admission of a "second" outcry statement that bolstered the credibility of the four year old complainant. And finally, the evidence presented at trial was insufficient to convict appellant of the offense of aggravated sexual assault of a child under 14 years of age.

# ARGUMENT

**I:** **Appellant was denied due process by trial counsel's failure to raise appellant's ethnicity in relation to the DNA evidence.**

A defendant has a Sixth Amendment right to effective assistance of counsel. U.S. Const. amend. VI; *Ex Parte Lahood*, 401 S.W.3d 45, 49 (Tex.Crim.App. 2013); *citing Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The proper standard of review for claims of ineffective assistance of counsel is whether, considering the totality of the representation, counsel's performance was ineffective. *Lahood* at 49; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App.1999). An attorney's performance is deficient when it falls "below an objective standard of reasonableness" under prevailing professional norms and according to the necessity of the case. *Lahood* at 49-50; *Ex parte Moore*, 395 S.W.3d 152, 156–57 (Tex.Crim.App.2013). An error in trial strategy will be considered ineffective if counsel's actions are without a plausible basis. *Ex parte Bums*, 601 S.W.2d 370, 372 (Tex. Crim. App. 1980).

There is no plausible basis for trial counsel's failure to raise appellant's Hispanic heritage on cross examination of the State's DNA expert and in closing argument. Appellant testified that he was born and raised in Puerto Rico. (RR VII p.7). According to Michal Pierce, the State's DNA expert, the probability of the Y-STR profile found in CW's panties that appellant could <u>not</u> be excluded from is

12

a meager 1 in 285 for Hispanics. (RR VI p.97). Per the State's own expert, you would statistically expect to find 1 out of every 285 Hispanic males tested to match the DNA profile found in CW's panties. (*Id*). That fact is significantly more favorable to appellant than the 1 in 1,685 statistic for Caucasians and the 1 in 1,601 statistic for African-Americans. (*Id*). Appellant was denied due process by the failure of his trial counsel to cross exam the State's DNA expert on this point and for failing to raise it during closing argument.

**II:     Appellant was denied due process by trial counsel's failure to object to the prosecution's statement that appellant's DNA was present in the complaining witness' panties.**

To cause reversal, an improper question must be obviously harmful to the defendant. *Cavender v. State*, 547 S.W.2d 601, 603 (Tex. Crim. App. 1977). The general rule is that error in asking an improper question "may be cured or rendered harmless by its withdrawal or an instruction to disregard." *Huffman v. State*, 746 S.W.2d 212, 218 (Tex.Crim.App. 1988); *Carter v. State*, 614 S.W.2d 821, 824 (Tex. Crim. App. 1981). Failure to object to inadmissible testimony has been found to be ineffective assistance of counsel where no plausible trial strategy exists for not objecting. *Fuller v. State*, 224 S.W.3d 823, 837 (Tex. App. – Texarkana 2007).

Appellant's trial counsel failed to object to the following exchange between the prosecution and appellant:

13

Q. Yes. And you heard the testimony that there was a full male profile that was identified from the inside crotch of the panties and that was identified and documented before you even provided a sample to law enforcement. Did you understand that?

A. I do.

Q. Okay. And once you gave your DNA sample, your DNA matched to the male profile --

A. Correct.

Q. -- that had been found on the inside crotch of the panties?

A. Correct.

(RR VII p.63-64).

The prosecution's questioning was improper and obviously harmful. The statement that appellant's DNA matched the profile inside the crotch of CW's panties is a gross mischaracterization of the facts and misleading. The State's DNA expert testified that appellant could not be excluded from one of two male DNA profiles found inside CW's panties. (RR VI p.97). This is a far cry from being a DNA match. There is no plausible trial strategy for appellant's trial counsel's failure to object to this questioning from the prosecution. Given the weight and credibility given to DNA evidence, this false statement from the prosecution, allowed without objection, prejudiced the rights of the appellant and denied him due process.

14

**III: Appellant was denied due process by his own trial counsel's statement to the jury that appellant's DNA was present in the complaining witness' panties.**

The introduction of improper evidence by trial counsel can constitute ineffective assistance of counsel. *Robertson v. State*, 187 S.W.3d 475, 484 (Tex. Crim. App. 2006). In *Robertson*, the Court found that a defendant's trial lawyer performed deficiently under the first prong of *Strickland* by allowing the jury to hear prejudicial and clearly inadmissible evidence of prior convictions that were on appeal and not yet final. *Robertson* at 484. The Court found that introduction of this prejudicial and inadmissible evidence could serve no conceivable strategic purpose. *Id.*

In this case, appellant's trial counsel told the jury in closing argument that appellant was the primary contributor of DNA to CW's panties. (RR VII p.137). This is not what the evidence in the case shows. Specifically, appellant's trial counsel made the following statement in closing:

> "The State's making a big point about the fact that the primary contribution of DNA in those panties is from Mr. Nieves and trying to suggest to you that that couldn't have come just from casual contact, from incidental contact, or from surface to surface -- from contributor to surface onto those panties contact, but that's not what the DNA expert said. She said that she could not say with a reasonable degree of scientific certainty that that's how it happened, that it was from --

first of all, she can't say it's saliva. Second of all, she can't say that it was directly from the contributor, Mr. Nieves, to the panties. Or she – you know, and she can't say that it was Mr. Nieves to her body to the panties. We just don't know how that got there. And there are many explanations that are just as consistent with innocent activity as there are with any other activity. There is no solid, believable proof that the DNA on the panties from Mr. Nieves got there because he licked her."

(*Id*).

These erroneous statements by appellant's trial counsel regarding the DNA evidence are highly prejudicial.   At best, the State's DNA evidence is that appellant could not be excluded from one DNA profile found in CW's panties. (RR VI p.97).  The probability of other Hispanic males matching this Y-STR profile is 1 in 285. (RR VI p.97).  There is no conceivable strategic purpose for appellant's trial counsel to make the statements he did regarding the DNA evidence in closing argument.

**IV:  Appellant was denied due process by trial counsel's failure to retain a DNA expert.**

Failure to present expert testimony can constitute ineffective assistance of counsel. *See Ex Parte Briggs*, 187 S.W.3d 458 (Tex. Crim. App. 2005); *Wright v. State*, 223 S.W.3d 36 (Tex. App. – Houston[1st Dist.] 2006).  Appellant's trial counsel failed to retain a DNA expert.

Appellant's trial counsel gave the following explanation in closing argument as to why he didn't retain his own DNA expert:

> "And we could have brought an expert in here. We could have gotten a DNA expert and brought the DNA expert in here, had our DNA expert testify, and say the same thing or something else, but then, of course, the State is going to get a chance to ask questions and say: Well, they paid you to come in here. We didn't need to do that. This expert, the State's own expert, told you exactly what we believe and wanted you to hear. . ."

(RR VII p.136).

The problem with this statement is that appellant's trial counsel did not understand what the State's DNA expert was saying. The errors and misstatements made by appellant's trial counsel in regards to the DNA evidence could have been prevented if a defense DNA expert had been retained. Failure to retain a defense DNA expert, in light of the errors made by trial counsel, denied appellant of due process.

## V:    The cumulative effect of trial counsel's errors regarding DNA evidence denied appellant of due process.

When no single error may be sufficient to show ineffective assistance of counsel, cumulative error can meet the *Strickland* standard. *Ex parte Welborn*, 785 S.W.2d 391, 396 (Tex. Crim. App. 1990). In *Ex parte Welborn*, the Court found ineffective assistance of counsel from the culmination of the following errors: (1)

failure to conduct a reasonable investigation of the facts or law; (2) allowing the introduction of extraneous offenses in the guilt/innocence phase without objection; (3) allowing the jury to hear damaging hearsay statements without objection; (4) failure to interview State's witnesses; and (5) unfamiliarity with the State's theory of the case. *Id.*

The cumulative errors of appellant's trial counsel in this case also amount to a denial of due process. Appellant's trial counsel made the following errors: (1) failed to raise appellant's ethnicity in relation to more favorable statistics regarding the DNA evidence; (2) failed to object to the erroneous statement that appellant's DNA matched the profile in the complaining witness' panties when the evidence was that appellant's profile could simply not be excluded; (3) told the jury during closing argument that appellant was the primary contributor of DNA to complainant's panties contrary to the testimony of the State's DNA expert; (4) failed to retain a defense DNA expert to explain the evidence to him and the jury. While any one of these errors, standing alone, may be viewed as harmless, it is not possible to view the cumulative effect of all of these errors without harm to the substantial rights of appellant.

**VI:** **The trial court erred by admitting a second outcry statement from the complaining witness.**

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Oprean v. State,* 201 S.W.3d 724, 726 (Tex. Crim. App. 2006); *Burden v. State,* 55 S.W.3d 608, 615 (Tex. Crim. App. 2001). An appellate court will not reverse a trial court's ruling unless that ruling falls outside the zone of reasonable disagreement. *Zuliani v. State,* 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Burden,* 55 S.W.3d at 615. Error in the admission of evidence is nonconstitutional error and is, therefore, subject to a harm analysis under Rule 44.2(b) of the Rules of Appellate Procedure. TEX. R. APP. P. 44.2(b); *Potier v. State,* 68 S.W.3d 657, 666 (Tex. Crim. App. 2002); *Johnson v. State,* 967 S.W.2d 410, 417 Tex. Crim. App. 1998); *West v. State,* 124 S.W.3d 732, 734 (Tex. App.-Houston [1st Dist.] 2003, pet. ref'd). Therefore, to obtain a reversal of a conviction based on error in the admission of evidence, an appellant must show that the trial court's ruling was in error and that the error affected his substantial rights. Rule 44.2(b);*West,* 124 S.W.3d at 734. Substantial rights are not affected by the erroneous admission of evidence "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Motilla v. State,* 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

The trial court erroneously allowed the following exchange between the prosecution and CW's father:

Q. Did your wife tell you that the defendant had sexually abused (CW) or did (CW) tell you that?

A. (CW) --

MR. RUZZO: I object to the leading question, Your Honor. And I object to the hearsay.

THE COURT: Overruled.

Q. (By Ms. Smith) You can answer.

A. (CW) – (CW's mother) asked her to tell – (CW) to tell me. (CW) told me.

(RR V p.110).

CW's statement to her father about the alleged assault is hearsay. It is an out of court statement being offered for the truth of the matter asserted. TEX. R. EVID. 801. It does not fit the hearsay exception of an outcry statement because CW's father is not the first person to whom CW described the alleged sexual assault. (RR IV p.67); see TEX. CODE CRIM. PRO. Art. 38.072. The admission of this "second" outcry statement only goes to bolster the credibility of the four year old complainant and impermissibly harms appellant, especially in light of the absence of any eye witnesses or physical evidence.

**VII: The evidence was insufficient to support a conviction for aggravated sexual assault of a child under 14 years of age.**

An appellate court may reverse a conviction when the facts introduced at trial are insufficient to support the verdict. Tex. Code Crim. Proc. Art. 44.25. The

standard for sufficiency of the evidence in criminal cases was established by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  The Texas Court of Criminal Appeals has characterized the *Jackson v. Virginia* standard as follows: "Considering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 899 (Tex.Crim.App. 2010), citing *Jackson v. Virginia*, 443 U.S. at 319.  The standard set forth in *Jackson v. Virginia*, "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks* at 912.

The only evidence that in this case is an outcry statement from a four year old child and DNA evidence that merely finds that appellant cannot be excluded. There were no eye witnesses to the alleged assault.   There were no physical signs consistent with sexual assault on the complaining witness when she was examined within 96 hours of the alleged assault. (RR V p.173 & 179).  No blood or semen were detected during the sexual assault examination of the complainant. (RR VI p.82).  Even though the allegation in the indictment was contact between the sexual organ of CW and the mouth of the appellant, no saliva was found on her panties.

(RR VI p.97). There simply isn't enough evidence to support a conviction of aggravated sexual assault of a child under 14 years of age.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant prays that this Court reverse the judgment and sentence in this case and enter an order granting an acquittal, or in the alternative a new trial.

Respectfully submitted,

/s/ Joe David Wells
Joe David Wells
State Bar No. 90001904
P.O. Box 2064
Houston, Texas 77252
Tel (281) 410-8778
Fax (832) 201-0467

ATTORNEY FOR APPELLANT

## CERTIFICATE OF SERVICE

I, Joe David Wells, do certify that a true and correct copy of this Appellant's Brief was delivered to the Harris County District Attorney's Office by electronic filing contemporaneously with the filing of this document.

/s/ Joe David Wells
Joe David Wells

## TRAP 9.4(i)(3) CERTIFICATE OF COMPLIANCE

I, Joe David Wells, do certify that this document complies with Texas Rule of Appellate Procedure 9.4(i)(3) and has a word count of 4,403 words.

/s/ Joe David Wells
Joe David Wells