**Opinion filed April 2, 2009**



**In The**

# Eleventh Court of Appeals

_____

**No. 11-07-00247-CR**

_____

**JAMON EARNEST JENKINS, Appellant**

**V.**

**STATE OF TEXAS, Appellee**

**On Appeal from the 385th District Court**

**Midland County, Texas**

**Trial Court Cause No. CR31900**

## M E M O R A N D U M   O P I N I O N

The jury convicted Jamon Earnest Jenkins of three counts of aggravated sexual assault of a child and two counts of aggravated kidnapping. The jury assessed punishment at confinement for life on each of the aggravated sexual assault convictions and at confinement for twenty years on both of the aggravated kidnapping convictions. The trial court ordered that the sentences run concurrently. We affirm.

*Background*

Appellant was indicted for four counts of aggravated sexual assault of a child (Counts I through IV) and four counts of aggravated kidnapping (Counts V through VIII).[1]  The indictment alleged that the offenses occurred on or about February 13, 2006.  Count I alleged that appellant penetrated Jane's female sexual organ with his sexual organ.  Count II alleged that appellant penetrated John's mouth with his sexual organ.  Count III alleged that appellant penetrated Jane's sexual organ with a hot dog wiener and a bar of soap.  Count IV alleged that appellant penetrated Jane's mouth with his sexual organ.  Counts V through VIII alleged that appellant kidnapped Jane, John, J.C., and A.F. with the intent to commit aggravated sexual assault against them.  At the time of the conduct alleged in the indictment, Jane was five years old, John was six years old, J.C. was seven years old, and A.F. was eight years old.

The jury convicted appellant of Count II (aggravated sexual assault of John), Count III (aggravated sexual assault of Jane), Count IV (aggravated sexual assault of Jane), Count V (aggravated kidnapping of Jane), and Count VI (aggravated kidnapping of John).  The jury acquitted appellant on the other three counts.

*Issues on Appeal*

Appellant presents seven points of error for review.  In his first and fifth points, he challenges the legal and factual sufficiency of the evidence to support his conviction.  In his second, third, fourth, and sixth points, he complains of evidentiary error.  In his seventh point, he asserts that the State made improper comments during jury argument in the guilt/innocence phase.

*Sufficiency of the Evidence*

To determine if the evidence is legally sufficient, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Jackson v. State*, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000).  To determine if the evidence is factually sufficient, the appellate court reviews all of the evidence in a neutral light.  *Watson v. State*, 204 S.W.3d 404, 414 (Tex.

_____

[1]The indictment referred to the children by their real names.  To protect their identity, we will refer to the children as "Jane," "John," "J.C.," and "A.F."

2

Crim. App. 2006) (overruling in part *Zuniga v. State*, 144 S.W.3d 477 (Tex. Crim. App. 2004)); *Johnson v. State*, 23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Then, the reviewing court determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson*, 204 S.W.3d at 414-15; *Johnson*, 23 S.W.3d at 10-11. The jury, as the finder of fact, is the sole judge of the weight and credibility of the witnesses' testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).

The record shows that Jane, John, J.C., and A.F. were playing in a park on the grounds of the Quail Hollow Apartments in Midland on February 13, 2006. All four of the children testified that a man made them go into one of the apartments at the complex. The children did not know the man, and they did not want to go into the apartment with him. The children testified that the man was wearing purple clothes, and Jane said that he was wearing a do-rag. A.F. testified that the man said her mother had told him to take care of the children. A.F. noticed a red toy truck and other toys in the living room of the apartment. Jane testified that she remembered that a toy truck and a Barbie doll were in the apartment. The man eventually let J.C. and A.F. leave the apartment.

Jane testified that appellant took her panties off her and that he stuck a hot dog in her "tee-tee." She also testified that the man made her "suck on his weenie." John testified that he saw the man "[stick] his weenie in [Jane's] mouth." John said that the man spanked Jane and him. Jane testified that the man made John and her take a bath and that the man stuck a bar of soap in her "tee-tee" while she was taking the bath. John said that the man did not put his "weenie" in John's mouth.

The prosecutor showed Jane drawings of a girl and a boy without clothes on during Jane's testimony. When asked to identify the "tee-tee" on the picture of the girl, Jane circled the girl's sexual organ. When asked to identify the "weenie" on the picture of the boy, Jane circled the boy's sexual organ. The prosecutor also showed John drawings. When asked to identify the "weenie" on the picture of the boy, John circled the boy's sexual organ.

Jane and John's father, Byron Keith Myers, testified as the outcry witness. Myers testified that, on February 13, 2006, he went to the park at the Quail Hollow Apartments to look for Jane and John. At that time, no children were in the park. Myers continued to look for his children. As he

was looking, Jane and John ran up to him. Myers testified that the children were scared and acting strange. Jane told him that a man had stuck his "thing" in her mouth and that the man had "put his big thing inside of her." John told him that the man had stuck his "thing" in John's mouth. Myers understood that his children were referring to the man's penis when they referred to his "thing." The children also told Myers that the man was wearing a purple jacket. Myers testified that he called 911. Myers also testified that he did not give the man permission to take Jane and John into that apartment.

The police arrived at the scene. During their investigation, the police determined that the man had taken the children into Apartment No. R7. Midland Police Officer Timothy James Newton testified that the suspect was described to him as being an adult black male, thin, about 5' 10" tall, and wearing purple pants. At about 7:50 p.m., Officer Newton saw a black male wearing purple pants, a purple jacket, a flannel shirt, and a blue bandanna walk to and enter Apartment No. R7. Officer Newton and Midland Police Officer Sergio Hernandez approached the apartment, and then Officer Newton knocked on the door. A man inside the apartment asked who was at the door, and Officer Newton told him that it was the police. Officer Newton testified that the man became belligerent and said that he did not have to answer the door. Ultimately, the man opened the door, and the officers told him that they needed to speak with him about an incident that had happened. Officer Newton testified that the man stepped outside the apartment; that "he became even more belligerent and very irate"; and that he said: "Arrest me." Officer Newton detained the man. Another officer brought J.C. and A.F. to the location where Officer Newton was detaining the man. J.C. and A.F. identified the man as being the person who had made them go into the apartment. Officer Newton testified that the man J.C. and A.F. identified was appellant.

Jane and John were taken to the hospital for sexual assault examinations. The officers transported appellant to the hospital, and John identified appellant as the man who had assaulted him. The officers transported appellant to the Midland County Detention Center. Photographs were taken of appellant, and the State introduced the photographs into evidence as State's Exhibit Nos. 52-54. The photographs showed appellant wearing purple pants, a flannel shirt, a purple jacket, and a blue bandanna on his head.

4

The evidence established that appellant lived at Apartment No. R7. During a search of the apartment, officers found a hot dog on the bed in the bedroom. They also found a red toy truck and a doll in the apartment. The officers also found standing water in the bathtub. Tony Martin Barrett, an Identification Specialist with the Midland Police Department, took pictures inside the apartment and seized various items of evidence at the officers' request. He seized the hot dog and sent it to the DPS crime lab in Lubbock for DNA testing. Barrett also seized the toy truck and the doll, and they were introduced into evidence. Photographs of the hot dog, the toy truck, the doll, and the bathtub were also introduced into evidence.

Steven Brent Hester, a forensic scientist at the DPS crime lab in Lubbock, conducted DNA testing on the hot dog. Hester testified that he compared known DNA samples of Jane, John, and appellant with a DNA "stain" from the hot dog. Based on the testing, Hester concluded that Jane, John, and appellant could not be excluded as contributors to the stain. Hester testified that there was a 1 in 4,144,000 chance that someone other than Jane could have been a contributor to the DNA found on the hot dog, that there was a 1 in 53,480 chance that someone other than John could have been a contributor to the DNA found on the hot dog, and that there was a 1 in 1,620 chance that someone other than appellant could have been a contributor to the DNA found on the hot dog.

Donna Doyle, a Sexual Assault Nurse Examiner, testified about her examinations of Jane and John. Doyle testified that Jane "had some redness to the inner aspect of the labia minora, around the edge of the hymen and urethra." Doyle also testified that this finding was consistent with sexual penetration of the female sexual organ.

Jane testified that the man pictured in State's Exhibit No. 52 did the sexual acts to her. She said she did not see the man in court. A.F. identified appellant in court as the man who had taken her into the apartment.

Applying the above standards of review, we hold that the evidence was legally and factually sufficient to support the jury's verdict. The State presented overwhelming evidence that appellant was the man who took the children into the apartment. With respect to Counts III and IV of the indictment, Jane testified that the man stuck a hot dog and a bar of soap in her "tee-tee" and made her "suck on his weenie." John said that he saw the man "[stick] his weenie in [Jane's] mouth." Myers, the outcry witness, said that Jane told him that the man stuck his "thing" in her mouth. The

officers found a hot dog on the bed in the apartment, and the State presented compelling DNA evidence connecting Jane, John, and appellant to the hot dog. This evidence, along with the additional evidence summarized above, was legally and factually sufficient to support appellant's convictions on Counts III and IV of the indictment.

With respect to Count II of the indictment, Myers testified that John told him the man stuck his "thing" in John's mouth. A child victim's outcry statement alone can be sufficient to sustain a conviction for aggravated sexual assault. *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991); *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd); *Kimberlin v. State*, 877 S.W.2d 828, 831 (Tex. App.—Fort Worth 1994, pet. ref'd). John testified at trial that the man did not put his "weenie" in his mouth. As the sole judge of the credibility of the witnesses, the jury was free to believe the outcry witness's testimony and to disbelieve John's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). The evidence was legally and factually sufficient to support appellant's conviction on Count II of the indictment.

Counts V and VI of the indictment charged appellant with kidnapping Jane and John with the intent to commit aggravated sexual assault against them. A person commits the offense of aggravated kidnapping "if he intentionally or knowingly abducts another person with the intent to: . . . violate or abuse [the person] sexually." TEX. PENAL CODE ANN. § 20.04(a)(4) (Vernon 2003). The evidence was legally and factually sufficient to establish that appellant intentionally or knowingly abducted Jane and John with the intent to commit aggravated sexual assault against them; therefore, the evidence was sufficient to support appellant's convictions on Counts V and VI of the indictment. We overrule appellant's first and fifth points of error.

*Evidentiary Issues*

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006); *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001). An appellate court will not reverse a trial court's ruling unless that ruling falls outside the zone of reasonable disagreement. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Burden*, 55 S.W.3d at 615. Error in the admission of evidence is nonconstitutional error and is, therefore, subject to a harm analysis under Rule 44.2(b) of the Rules of Appellate Procedure. TEX. R. APP. P. 44.2(b); *Potier v. State*, 68 S.W.3d 657, 666 (Tex. Crim.

App. 2002); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *West v. State*, 124 S.W.3d 732, 734 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). Therefore, to obtain a reversal of a conviction based on error in the admission of evidence, an appellant must show that the trial court's ruling was in error and that the error affected his substantial rights. Rule 44.2(b); *West*, 124 S.W.3d at 734.

In his second point of error, appellant asserts that the trial court erred in admitting evidence without a proper predicate being established for its admission. The State's first witness was Hester. During his testimony, the State sought to introduce into evidence the hot dog (State's Exhibit No. 2), the sexual assault evidence collection kits of Jane and John (State's Exhibit Nos. 3 and 3-C), and buccal swabs taken from appellant (State's Exhibit No. 4). Appellant objected to the admission of these exhibits on the ground that the State had failed to prove a proper chain of custody for their admission. The trial court conditionally admitted the exhibits, "subject to connection with a predicate."

The State presented chain-of-custody evidence relating to these exhibits later in the trial. The State reoffered the hot dog (State's Exhibit No. 2) and buccal swabs (State's Exhibit No. 4) during Barrett's testimony. Appellant did not assert a new objection to the admission of the hot dog and buccal swabs. Appellant's counsel stated, "I think we have already covered items 2 [the hot dog] and 4 [the buccal swabs]." The trial court admitted State's Exhibit Nos. 2 and 4. The State reoffered the sexual assault evidence collection kits (State's Exhibit Nos. 3 and 3-C) during Doyle's testimony. Appellant objected to the admission of these exhibits on the ground that "there [was] an improper predicate." The trial court overruled the objection and admitted the exhibits.

Based on a review of the chain-of-custody evidence in the record, it appears that the State established a proper chain of custody for the admission of State's Exhibit Nos. 2, 3, 3-C, and 4. Appellant has not shown in his brief that the State failed to establish the chain of custody for the exhibits. The trial court did not abuse its discretion in admitting the exhibits. In addition, appellant's "improper predicate" objections were not sufficiently specific to preserve error on the challenged exhibits. *Bird v. State*, 692 S.W.2d 65, 70 (Tex. Crim. App. 1985). To preserve error, "[c]ounsel must inform the court just how the predicate is deficient." *Id.* Finally, appellant's

objection that the State failed to prove a proper chain of custody went to the weight of the evidence rather than its admissibility. *Id.* We overrule appellant's second point of error.

In his third point, appellant complains that certain testimony by Myers improperly invaded the jury's province. During cross-examination, Myers testified, "[M]an, the man raped my kids." Appellant's counsel objected to this testimony on the grounds that it was unresponsive to the question asked, that it was improper, and that it invaded the jury's province. Appellant's counsel also moved for a mistrial. The trial court denied the motion for mistrial. Later, Myers testified, "All I know is he raped my kids." Appellant's counsel objected to the testimony and moved for a mistrial. The trial court denied the motion for mistrial.

We review a trial court's denial of a motion for mistrial under an abuse of discretion standard. *Hawkins v. State*, 135 S.W.3d 72, 76-77 (Tex. Crim. App. 2004). Only highly prejudicial and incurable errors will necessitate a mistrial. *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim App. 2003). Improper testimony may be cured by a trial court's instruction to disregard, except in extreme cases where it appears that the evidence is clearly calculated to inflame the minds of the jurors and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds. *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987).

Appellant did not request the trial court to instruct the jury to disregard Myers's testimony. An event that could have been cured by instruction to the jury will not lead an appellate court to reverse a judgment on an appeal by a party who did not request an instruction in the trial court. *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004). In this cause, an appropriate jury instruction would have cured harm, if any, caused by Myers's unresponsive testimony. Therefore, the trial court did not abuse its discretion in denying appellant's motions for mistrial. Additionally, the record does not demonstrate that appellant was harmed by Myers's unresponsive statements. We overrule appellant's third point of error.

In his fourth point, appellant complains that the trial court erred in admitting testimony by Cindy Perez that "bolstered" the testimony of her children, J.C. and A.F., concerning their identification of appellant. After the police officers detained appellant, J.C. and A.F. identified appellant as the man who had taken them into the apartment. J.C. and A.F. testified about their identification of appellant. Perez testified that J.C. and A.F. had identified appellant as the man who

8

had taken them into the apartment. Appellant objected to Perez's testimony on the grounds of hearsay and of improper bolstering of J.C.'s and A.F.'s testimony. The trial court overruled the objections.

Bolstering is not a valid objection to the challenged testimony. *Jones v. State*, 833 S.W.2d 634, 635 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd); *Henderson v. State*, 816 S.W.2d 845, 849 (Tex. App.—Fort Worth 1991, no pet.). Bolstering a witness's identification of a defendant had historically been disallowed because the testimony was hearsay. *Smith v. State*, 830 S.W.2d 328, 329 (Tex. App.—Houston [14th Dist.] 1992, no pet.). However, Rule 801(e)(1)(C) of the Rules of Evidence changed the law concerning the State's bolstering of a witness's identification of a defendant. *See* TEX. R. EVID. 801(e)(1)(C); *Smith*, 830 S.W.2d at 329. Under Rule 801(e)(1)(C), a statement is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is: one of identification of a person made after perceiving the person." A witness may testify to another witness's identification of a defendant if the identification satisfies the requirements of Rule 801(e)(1)(C). Such testimony is admissible evidence and is not impermissible bolstering. *Jackson v. State*, 846 S.W.2d 411, 414 (Tex. App.—Houston [14th Dist.] 1992, no pet.); *Smith*, 830 S.W.2d at 329. J.C. and A.F., the declarants, testified at trial and were subject to cross-examination concerning their identification of appellant. Therefore, Perez's testimony was admissible under Rule 801(e)(1)(C). The trial court did not abuse its discretion by allowing Perez's testimony. In addition, the record does not demonstrate that appellant was harmed by her testimony. We overrule appellant's fourth point of error.

In his sixth point, appellant contends that, through Myers's testimony, the State "improperly struck at [him] over his lawyer's shoulders." The challenged testimony did not occur during the State's examination of Myers. Rather, during cross-examination by appellant's counsel, Myers stated, "You ain't trying to understand nothing" and "You are trying to confuse me." Appellant moved for a mistrial after Myers's first statement. The trial court denied the motion for mistrial. Appellant objected to the second statement, and the trial court sustained the objection.

The State may not strike at a defendant over the shoulders of his counsel or accuse defense counsel of bad faith or insincerity. *Fuentes v. State*, 664 S.W.2d 333, 335 (Tex. Crim. App. 1984). For example, a prosecutor is said to strike at a defendant over counsel's shoulders by accusing

9

defense counsel of "manufacturing evidence," being paid to get the defendant "off the hook," or putting on witnesses who are known to be lying. *Gomez v. State*, 704 S.W.2d 770, 771-72 (Tex. Crim. App. 1985); *Bell v. State*, 614 S.W.2d 122, 123 (Tex. Crim. App. 1981).

The State did not strike at appellant over the shoulders of his counsel through Myers's testimony. The testimony occurred during cross-examination, and there is no evidence in the record that the State encouraged or requested Myers to make the challenged statements. Additionally, an instruction to disregard the challenged testimony would have cured any harm to appellant. *Gardner*, 730 S.W.2d at 696. However, appellant did not request the trial court to make such an instruction. The trial court did not abuse its discretion in denying appellant's motion for mistrial. We overrule appellant's sixth point of error.

*Jury Argument*

The prosecutor stated that appellant took the four children into the apartment because "he was going to satisfy his sexual appetite with any of those kids." Appellant contends in his seventh point of error that this remark was improper. To be proper, the State's jury argument must fall into one of the following four categories: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Felder v. State*, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992); *Esquivel v. State*, 180 S.W.3d 689, 692 (Tex. App.—Eastland 2005, no pet.). Counsel is allowed wide latitude in drawing inferences from the record that are reasonable, fair, legitimate, and offered in good faith. *Shannon v. State*, 942 S.W.2d 591, 597 (Tex. Crim. App. 1996). The prosecutor's remarks were a reasonable deduction from the evidence. We overrule appellant's seventh point of error.

*This Court's Ruling*

We affirm the judgment of the trial court.

TERRY McCALL

JUSTICE

April 2, 2009

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.