Opinion filed April 2, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed April 2,
2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                  ___________

 

                                                          No. 11-07-00247-CR

                                                    __________

 

                              JAMON EARNEST JENKINS, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 385th District Court

 

                                                        Midland
County, Texas

 

                                                 Trial
Court Cause No. CR31900

 



 

                                             M
E M O R A N D U M   O P I N I O N

The
jury convicted Jamon Earnest Jenkins of three counts of aggravated sexual
assault of a child and two counts of aggravated kidnapping.  The jury assessed
punishment at confinement for life on each of the aggravated sexual assault
convictions and at confinement for twenty years on both of the aggravated
kidnapping convictions.  The trial court ordered that the sentences run
concurrently.  We affirm.

                                                                    Background

Appellant
was indicted for four counts of aggravated sexual assault of a child (Counts I
through IV) and four counts of aggravated kidnapping (Counts V through VIII).[1] 
The indictment alleged that the offenses occurred on or about February 13,
2006.  Count I alleged that appellant penetrated Jane=s female sexual organ with his sexual organ. 
Count II alleged that appellant penetrated John=s
mouth with his sexual organ.  Count III alleged that appellant penetrated Jane=s sexual organ with a hot
dog wiener and a bar of soap.  Count IV alleged that appellant penetrated Jane=s mouth with his sexual
organ.  Counts V through VIII alleged that appellant kidnapped Jane, John,
J.C., and A.F. with the intent to commit aggravated sexual assault against
them.  At the time of the conduct alleged in the indictment, Jane was five
years old, John was six years old, J.C. was seven years old, and A.F. was eight
years old.

The
jury convicted appellant of Count II (aggravated sexual assault of John), Count
III (aggravated sexual assault of Jane), Count IV (aggravated sexual assault of
Jane), Count V (aggravated kidnapping of Jane), and Count VI (aggravated
kidnapping of John).  The jury acquitted appellant on the other three counts.

                                                                 Issues
on Appeal

Appellant
presents seven points of error for review.  In his first and fifth points, he
challenges the legal and factual sufficiency of the evidence to support his
conviction.  In his second, third, fourth, and sixth points, he complains of
evidentiary error.  In his seventh point, he asserts that the State made
improper comments during jury argument in the guilt/innocence phase.

Sufficiency
of the Evidence








To
determine if the evidence is legally sufficient, we must review all of the
evidence in the light most favorable to the verdict and determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319
(1979); Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007);
Jackson v. State, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000).  To determine
if the evidence is factually sufficient, the appellate court reviews all of the
evidence in a neutral light.  Watson v. State, 204 S.W.3d 404, 414 (Tex.
Crim. App. 2006) (overruling in part Zuniga v. State, 144 S.W.3d 477
(Tex. Crim. App. 2004)); Johnson v. State, 23 S.W.3d 1, 10-11 (Tex.
Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407-08 (Tex. Crim. App.
1997); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). 
Then, the reviewing court determines whether the evidence supporting the
verdict is so weak that the verdict is clearly wrong and manifestly unjust or
whether the verdict is against the great weight and preponderance of the
conflicting evidence.  Watson, 204 S.W.3d at 414-15; Johnson, 23
S.W.3d at 10-11.  The jury, as the finder of fact, is the sole judge of the
weight and credibility of the witnesses=
testimony.  Tex. Code Crim. Proc. Ann.
art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).

The
record shows that Jane, John, J.C., and A.F. were playing in a park on the
grounds of the Quail Hollow Apartments in Midland on February 13, 2006.  All
four of the children testified that a man made them go into one of the
apartments at the complex.  The children did not know the man, and they did not
want to go into the apartment with him.  The children testified that the man
was wearing purple clothes, and Jane said that he was wearing a do-rag.  A.F.
testified that the man said her mother had told him to take care of the
children.  A.F. noticed a red toy truck and other toys in the living room of
the apartment.  Jane testified that she remembered that a toy truck and a
Barbie doll were in the apartment.  The man eventually let J.C. and A.F. leave
the apartment.

Jane
testified that appellant took her panties off her and that he stuck a hot dog
in her Atee-tee.@  She also testified that
the man made her Asuck
on his weenie.@  John
testified that he saw the man A[stick]
his weenie in [Jane=s]
mouth.@  John said
that the man spanked Jane and him.  Jane testified that the man made John and
her take a bath and that the man stuck a bar of soap in her Atee-tee@ while she was taking the
bath.  John said that the man did not put his Aweenie@ in John=s mouth.

The
prosecutor showed Jane drawings of a girl and a boy without clothes on during
Jane=s testimony. 
When asked to identify the Atee-tee@ on the picture of the
girl, Jane circled the girl=s
sexual organ.  When asked to identify the Aweenie@ on the picture of the boy,
Jane circled the boy=s
sexual organ.  The prosecutor also showed John drawings.  When asked to
identify the Aweenie@ on the picture of the boy,
John circled the boy=s
sexual organ.








Jane
and John=s father,
Byron Keith Myers, testified as the outcry witness.  Myers testified that, on
February 13, 2006, he went to the park at the Quail Hollow Apartments to look
for Jane and John.  At that time, no children were in the park.  Myers
continued to look for his children.  As he was looking, Jane and John ran up to
him.  Myers testified that the children were scared and acting strange.  Jane
told him that a man had stuck his Athing@ in her mouth and that the
man had Aput his big
thing inside of her.@ 
John told him that the man had stuck his Athing@ in John=s mouth.  Myers understood
that his children were referring to the man=s
penis when they referred to his Athing.@  The children also told
Myers that the man was wearing a purple jacket.  Myers testified that he called
911.  Myers also testified that he did not give the man permission to take Jane
and John into that apartment.

The
police arrived at the scene.  During their investigation, the police determined
that the man had taken the children into Apartment No. R7.  Midland Police
Officer Timothy James Newton testified that the suspect was described to him as
being an adult black male, thin, about 5' 10" tall, and wearing purple
pants.  At about 7:50 p.m., Officer Newton saw a black male wearing purple
pants, a purple jacket, a flannel shirt, and a blue bandanna walk to and enter
Apartment No. R7.  Officer Newton and Midland Police Officer Sergio Hernandez
approached the apartment, and then Officer Newton knocked on the door.  A man
inside the apartment asked who was at the door, and Officer Newton told him
that it was the police.  Officer Newton testified that the man became
belligerent and said that he did not have to answer the door.  Ultimately, the
man opened the door, and the officers told him that they needed to speak with
him about an incident that had happened. Officer Newton testified that the man
stepped outside the apartment; that Ahe
became even more belligerent and very irate@;
and that he said:  AArrest
me.@  Officer Newton
detained the man.  Another officer brought J.C. and A.F. to the location where
Officer Newton was detaining the man. J.C. and A.F. identified the man as being
the person who had made them go into the apartment.  Officer Newton testified
that the man J.C. and A.F. identified was appellant. 

Jane
and John were taken to the hospital for sexual assault examinations.  The
officers transported appellant to the hospital, and John identified appellant
as the man who had assaulted him.  The officers transported appellant to the
Midland County Detention Center.  Photographs were taken of appellant, and the
State introduced the photographs into evidence as State=s Exhibit Nos. 52-54.  The photographs
showed appellant wearing purple pants, a flannel shirt, a purple jacket, and a
blue bandanna on his head.








The
evidence established that appellant lived at Apartment No. R7.  During a search
of the apartment, officers found a hot dog on the bed in the bedroom.  They
also found a red toy truck and a doll in the apartment.  The officers also
found standing water in the bathtub.  Tony Martin Barrett, an Identification
Specialist with the Midland Police Department, took pictures inside the
apartment and seized various items of evidence at the officers= request.  He seized the
hot dog and sent it to the DPS crime lab in Lubbock for DNA testing.  Barrett
also seized the toy truck and the doll, and they were introduced into
evidence.  Photographs of the hot dog, the toy truck, the doll, and the bathtub
were also introduced into evidence.

Steven
Brent Hester, a forensic scientist at the DPS crime lab in Lubbock, conducted
DNA testing on the hot dog.  Hester testified that he compared known DNA
samples of Jane, John, and appellant with a DNA Astain@ from the hot dog.  Based
on the testing, Hester concluded that Jane, John, and appellant could not be
excluded as contributors to the stain.  Hester testified that there was a 1 in
4,144,000 chance that someone other than Jane could have been a contributor to
the DNA found on the hot dog, that there was a 1 in 53,480 chance that someone
other than John could have been a contributor to the DNA found on the hot dog,
and that there was a 1 in 1,620 chance that someone other than appellant could
have been a contributor to the DNA found on the hot dog.

Donna
Doyle, a Sexual Assault Nurse Examiner, testified about her examinations of
Jane and John.  Doyle testified that Jane Ahad
some redness to the inner aspect of the labia minora, around the edge of the
hymen and urethra.@ 
Doyle also testified that this finding was consistent with sexual penetration
of the female sexual organ.

Jane
testified that the man pictured in State=s
Exhibit No. 52 did the sexual acts to her.  She said she did not see the man in
court.  A.F. identified appellant in court as the man who had taken her into
the apartment.








Applying
the above standards of review, we hold that the evidence was legally and
factually sufficient to support the jury=s
verdict.  The State presented overwhelming evidence that appellant was the man
who took the children into the apartment.  With respect to Counts III and IV of
the indictment, Jane testified that the man stuck a hot dog and a bar of soap
in her Atee-tee@ and made her Asuck on his weenie.@  John said that he saw the
man A[stick] his
weenie in [Jane=s]
mouth.@ Myers, the
outcry witness, said that Jane told him that the man stuck his Athing@ in her mouth.  The
officers found a hot dog on the bed in the apartment, and the State presented
compelling DNA evidence connecting Jane, John, and appellant to the hot dog. 
This evidence, along with the additional evidence summarized above, was legally
and factually sufficient to support appellant=s
convictions on Counts III and IV of the indictment.

With
respect to Count II of the indictment, Myers testified that John told him the
man stuck his Athing@ in John=s mouth.  A child victim=s outcry statement alone
can be sufficient to sustain a conviction for aggravated sexual assault.  Rodriguez
v. State, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991); Tear v. State,
74 S.W.3d 555, 560 (Tex. App.CDallas
2002, pet. ref=d); Kimberlin
v. State, 877 S.W.2d 828, 831 (Tex. App.CFort
Worth 1994, pet. ref=d). 
John testified at trial that the man did not put his Aweenie@
in his mouth.  As the sole judge of the credibility of the witnesses, the jury
was free to believe the outcry witness=s
testimony and to disbelieve John=s
testimony.  Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). 
The evidence was legally and factually sufficient to support appellant=s conviction on Count II of
the indictment.

Counts
V and VI of the indictment charged appellant with kidnapping Jane and John with
the intent to commit aggravated sexual assault against them.  A person commits
the offense of aggravated kidnapping Aif
he intentionally or knowingly abducts another person with the intent
to: . . . violate or abuse [the person] sexually.@  Tex. Penal Code Ann. '
20.04(a)(4) (Vernon 2003).  The evidence was legally and factually sufficient
to establish that appellant intentionally or knowingly abducted Jane and John
with the intent to commit aggravated sexual assault against them;  therefore,
the evidence was sufficient to support appellant=s
convictions on Counts V and VI of the indictment.  We overrule appellant=s first and fifth points of
error.

                                                                Evidentiary
Issues








We
review a trial court=s
decision to admit or exclude evidence under an abuse of discretion standard.  Oprean
v. State, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006); Burden v. State,
55 S.W.3d 608, 615 (Tex. Crim. App. 2001).  An appellate court will not reverse
a trial court=s ruling
unless that ruling falls outside the zone of reasonable disagreement.  Zuliani
v. State, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); Burden, 55
S.W.3d at 615.  Error in the admission of evidence is nonconstitutional error
and is, therefore, subject to a harm analysis under Rule 44.2(b) of the Rules
of Appellate Procedure.  Tex. R. App. P.
44.2(b); Potier v. State, 68 S.W.3d 657, 666 (Tex. Crim. App. 2002); Johnson
v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); West v. State,
124 S.W.3d 732, 734 (Tex. App.CHouston
[1st Dist.] 2003, pet. ref=d). 
Therefore, to obtain a reversal of a conviction based on error in the admission
of evidence, an appellant must show that the trial court=s ruling was in error and that the error
affected his substantial rights.  Rule 44.2(b); West, 124 S.W.3d at 734.

In
his second point of error, appellant asserts that the trial court erred in
admitting evidence without a proper predicate being established for its
admission.  The State=s
first witness was Hester.  During his testimony, the State sought to introduce
into evidence the hot dog  (State=s
Exhibit No. 2),  the sexual assault evidence collection kits of Jane and
John (State=s Exhibit
Nos. 3 and 3-C), and buccal swabs taken from appellant (State=s Exhibit No. 4). 
Appellant objected to the admission of these exhibits on the ground that the
State had failed to prove a proper chain of custody for their admission.  The
trial court conditionally admitted the exhibits, Asubject
to connection with a predicate.@

The
State presented chain-of-custody evidence relating to these exhibits later in
the trial.  The State reoffered the hot dog (State=s Exhibit No. 2) and buccal swabs (State=s Exhibit No. 4) during
Barrett=s testimony. 
Appellant did not assert a new objection to the admission of the hot dog and
buccal swabs.  Appellant=s
counsel stated,  AI
think we have already covered items 2 [the hot dog] and 4 [the buccal swabs].@  The trial court admitted
State=s Exhibit Nos. 2
and 4.  The State reoffered the sexual assault evidence collection kits (State=s Exhibit Nos. 3 and 3-C)
during Doyle=s
testimony.  Appellant objected to the admission of these exhibits on the ground
that Athere [was] an
improper predicate.@ 
The trial court overruled the objection and admitted the
exhibits.                 








Based
on a review of the chain-of-custody evidence in the record, it appears that the
State established a proper chain of custody for the admission of State=s Exhibit Nos. 2, 3, 3-C,
and 4.  Appellant has not shown in his brief that the State failed to establish
the chain of custody for the exhibits.  The trial court did not abuse its
discretion in admitting the exhibits.  In addition, appellant=s Aimproper predicate@ objections were not sufficiently specific to
preserve error on the challenged exhibits.  Bird v. State, 692 S.W.2d
65, 70 (Tex. Crim. App. 1985).  To preserve error, A[c]ounsel must inform the court just how the
predicate is deficient.@ 
Id.  Finally, appellant=s
objection that the State failed to prove a proper chain of custody went to the
weight of the evidence rather than its admissibility.  Id.  We overrule
appellant=s second
point of error.

In
his third point, appellant complains that certain testimony by Myers improperly
invaded the jury=s
province.  During cross-examination, Myers testified, A[M]an, the man raped my kids.@ Appellant=s counsel objected to this
testimony on the grounds that it was unresponsive to the question asked, that
it was improper, and that it invaded the jury=s
province.  Appellant=s
counsel also moved for a mistrial.  The trial court denied the motion for
mistrial.  Later, Myers testified, AAll
I know is he raped my kids.@ 
Appellant=s counsel
objected to the testimony and moved for a mistrial.  The trial court denied the
motion for mistrial.

We
review a trial court=s
denial of a motion for mistrial under an abuse of discretion standard.  Hawkins
v. State, 135 S.W.3d 72, 76-77 (Tex. Crim. App. 2004).  Only highly
prejudicial and incurable errors will necessitate a mistrial.  Simpson v.
State, 119 S.W.3d 262, 272 (Tex. Crim  App. 2003).  Improper testimony may
be cured by a trial court=s
instruction to disregard, except in extreme cases where it appears that the
evidence is clearly calculated to inflame the minds of the jurors and is of
such character as to suggest the impossibility of withdrawing the impression
produced on their minds.  Gardner v. State, 730 S.W.2d 675, 696 (Tex.
Crim. App. 1987).  

Appellant
did not request the trial court to instruct the jury to disregard Myers=s testimony.  An event that
could have been cured by instruction to the jury will not lead an appellate
court to reverse a judgment on an appeal by a party who did not request an
instruction in the trial court.  Young v. State, 137 S.W.3d 65, 70 (Tex.
Crim. App. 2004).  In this cause, an appropriate jury instruction would have
cured harm, if any, caused by Myers=s
unresponsive testimony.  Therefore, the trial court did not abuse its
discretion in denying appellant=s
motions for mistrial.  Additionally, the record does not demonstrate that
appellant was harmed by Myers=s
unresponsive statements.  We overrule appellant=s
third point of error.








In
his fourth point, appellant complains that the trial court erred in admitting
testimony by Cindy Perez that Abolstered@ the testimony of her
children, J.C. and A.F., concerning their identification of appellant.  After
the police officers detained appellant, J.C. and A.F. identified appellant as
the man who had taken them into the apartment.  J.C. and A.F. testified about
their identification of appellant.  Perez testified that J.C. and A.F. had
identified appellant as the man who had taken them into the apartment.  Appellant
objected to Perez=s
testimony on the grounds of hearsay and of improper bolstering of J.C.=s and A.F.=s testimony.  The trial
court overruled the objections.

Bolstering
is not a valid objection to the challenged testimony.  Jones v. State,
833 S.W.2d 634, 635 (Tex. App.CHouston
[14th Dist.] 1992, pet. ref=d);
Henderson v. State, 816 S.W.2d 845, 849 (Tex. App.CFort Worth 1991, no pet.). 
Bolstering a witness=s
identification of a defendant had historically been disallowed because the testimony
was hearsay.  Smith v. State, 830 S.W.2d 328, 329 (Tex. App.CHouston [14th Dist.] 1992,
no pet.).  However, Rule 801(e)(1)(C) of the Rules of Evidence changed the law
concerning the State=s
bolstering of a witness=s
identification of a defendant.  See Tex.
R. Evid. 801(e)(1)(C); Smith, 830 S.W.2d at 329.  Under Rule
801(e)(1)(C), a statement is not hearsay if A[t]he
declarant testifies at the trial or hearing and is subject to cross-examination
concerning the statement, and the statement is:  one of identification of a
person made after perceiving the person.@ 
A witness may testify to another witness=s
identification of a defendant if the identification satisfies the requirements
of Rule 801(e)(1)(C).  Such testimony is admissible evidence and is not
impermissible bolstering. Jackson v. State, 846 S.W.2d 411, 414 (Tex.
App.CHouston [14th
Dist.] 1992, no pet.); Smith, 830 S.W.2d at 329.  J.C. and A.F., the
declarants, testified at trial and were subject to cross-examination concerning
their identification of appellant.  Therefore, Perez=s testimony was admissible under Rule
801(e)(1)(C).  The trial court did not abuse its discretion by allowing Perez=s testimony.  In addition,
the record does not demonstrate that appellant was harmed by her testimony.  We
overrule appellant=s
fourth point of error.

In
his sixth point, appellant contends that, through Myers=s testimony, the State Aimproperly struck at [him] over his lawyer=s shoulders.@  The challenged testimony
did not occur during the State=s
examination of Myers.  Rather, during cross-examination by appellant=s counsel, Myers stated, AYou ain=t trying to understand
nothing@ and AYou are trying to confuse
me.@  Appellant moved
for a mistrial after Myers=s
first statement.  The trial court denied the motion for mistrial. Appellant
objected to the second statement, and the trial court sustained the objection.








The
State may not strike at a defendant over the shoulders of his counsel or accuse
defense counsel of bad faith or insincerity.  Fuentes v. State, 664
S.W.2d 333, 335 (Tex. Crim. App. 1984). For example, a prosecutor is said to
strike at a defendant over counsel=s
shoulders by accusing defense counsel of Amanufacturing
evidence,@ being paid
to get the defendant Aoff
the hook,@ or putting
on witnesses who are known to be lying.  Gomez v. State, 704 S.W.2d 770,
771-72 (Tex. Crim. App. 1985); Bell v. State, 614 S.W.2d 122, 123 (Tex.
Crim. App. 1981).  

The
State did not strike at appellant over the shoulders of his counsel through
Myers=s testimony. 
The testimony occurred during cross-examination, and there is no evidence in
the record that the State encouraged or requested Myers to make the challenged
statements.  Additionally, an instruction to disregard the challenged testimony
would have cured any harm to appellant.  Gardner, 730 S.W.2d at 696. 
However, appellant did not request the trial court to make such an
instruction.  The trial court did not abuse its discretion in denying appellant=s motion for mistrial.  We
overrule appellant=s
sixth point of error.

Jury
Argument

The
prosecutor stated that appellant took the four children into the apartment
because Ahe was going
to satisfy his sexual appetite with any of those kids.@  Appellant contends in his seventh point of
error that this remark was improper.  To be proper, the State=s jury argument must fall
into one of the following four categories: (1) summation of the evidence; (2)
reasonable deduction from the evidence; (3) answer to argument of opposing
counsel; or (4) plea for law enforcement.  Felder v.  State, 848
S.W.2d 85, 94-95 (Tex. Crim. App. 1992); Esquivel v. State, 180 S.W.3d
689, 692 (Tex. App.CEastland
2005, no pet.).  Counsel is allowed wide latitude in drawing inferences from
the record that are reasonable, fair, legitimate, and offered in good faith.  Shannon
v. State, 942 S.W.2d 591, 597 (Tex. Crim. App. 1996).  The prosecutor=s remarks were a reasonable
deduction from the evidence.  We overrule appellant=s seventh point of error.

                                                               This
Court=s Ruling

We
affirm the judgment of the trial court.

 

 

TERRY McCALL

JUSTICE         

April 2, 2009

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









[1]The indictment referred to the children by their real
names.  To protect their identity, we will refer to the children as AJane,@ AJohn,@ AJ.C.,@ and AA.F.@